UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FREDERIC GREEN,         )<br>                                 )<br>         Petitioner,           )<br>                                 )<br>vs.                              )<br>                                 )<br>BILL DONAT, *et al.*,    )<br>                                 )<br>         Respondents.     )<br>_____/ | 3:07-cv-00362-RLH-WGC<br><br>**ORDER** |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Frederic Green, a Nevada prisoner. ECF Nos. 5/61.

I. BACKGROUND[1]

On December 5, 2001, a jury sitting in the state district court for Washoe County, Nevada, found Green guilty of sexual assault and aggravated stalking. The jury acquitted Green on a second charge of sexual assault. On January 29, 2002, the court sentenced Green to a term of life with parole eligibility after ten years on the sexual assault charge and to a consecutive maximum term of

---

[1] Except where indicated otherwise, this history is derived from the exhibits filed under ECF Nos. 16-20 and 75, and from this court's own docket entries.

156 months with parole eligibility after 35 months on the aggravated stalking charge.  The judgment of conviction was entered on January 29, 2002.  Green appealed.

On December 11, 2003, the Nevada Supreme Court affirmed the judgment of conviction. *Green v. State*, 80 P.3d 93 (Nev. 2003).  The Nevada Supreme Court recounted the facts supporting the convictions as follows:

> Green was married to the victim in this case, Ms. Camisha Linzie.  The couple moved to Sparks, Nevada, in August of 2000 to live with Ms. Linzie's mother, Mona Linzie.  Problems and disputes concerning money and their minor children quickly led to a very serious estrangement.  Matters were also complicated by an alleged meretricious relationship between Green and Mona Linzie.
>
> Ms. Linzie accused Green of sexual assault and repeated incidents of stalking.  Police ultimately arrested him following an eight-hour standoff, which was resolved with the assistance of a professional hostage negotiator.  The Washoe County District Attorney ultimately took Green to trial on two counts of sexual assault and one count of aggravated stalking.
>
> The trial record is replete with evidence of various degrees of harassment and physical violence perpetrated by Green against Ms. Linzie.  The primary incident took place on the evening of September 23, 2000. Ms. Linzie testified that Green entered her home, threatened her, demanded to know her whereabouts earlier in the evening, expressed suspicions of her infidelity, and proceeded to sexually assault her.  When Ms. Linzie attempted an escape, Green administered a very serious physical beating upon her person interrupted only by Ms. Linzie's mother.  Green fled when Ms. Linzie summoned the police.  After treatment at a local hospital, Ms. Linzie found refuge with a friend by the name of Debra Stoen.  Later that evening, Green left six to eight threatening messages at Ms. Stoen's residence.
>
> Evidence at trial supported prosecution claims that Green repeatedly threatened Ms. Linzie by calling her places of residence and employment, including threats that he would "beat her," "burn her" alive, and place bombs.  He also repeatedly threatened Ms. Linzie's co-workers.  Police investigators obtained statements from Green, in which he justified his communications to Ms. Linzie's friends and co-workers, claiming that he thought they were hiding Ms. Linzie and wanted them to know his side of the story.  He also denied striking Ms. Linzie but confirmed his allegations of her infidelity.

*Green*, 80 P.3d at 94.

On April 6, 2004, Green filed a post-conviction habeas petition in the state district court.  After appointment of counsel, Green supplemented his habeas petition.  Following an evidentiary hearing, the state district court denied the habeas petition, entering written findings of fact and

2

conclusions of law on April 4, 2006. Green appealed. On June 4, 2007, the Nevada Supreme Court affirmed the judgment of the state district court.

On August 8, 2007, Green initiated this federal habeas proceeding. Respondents moved to dismiss Green's habeas petition, arguing that it contained unexhausted claims and claims not cognizable in federal habeas. By order filed November 24, 2009, this court granted the motion finding that some of Green's claims fit within one or the other of those categories.

As to the unexhausted grounds, Green elected to seek a stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), which this court granted on April 1, 2010. Green's return to state court culminated with a decision from the Nevada Supreme Court, on June 13, 2012, affirming the lower court's finding that Green's second state habeas petition was procedurally defaulted because it was untimely pursuant to Nev. Rev. Stat. § 34.726 and successive under Nev. Rev. Stat. § 34.810.

On November 5, 2012, this court reopened the instant proceedings and allowed Green to amend two of the grounds in his habeas petition. Respondents moved to dismiss certain claims as procedurally defaulted. On August 13, 2013, this court entered an order dismissing two claims as procedurally defaulted, but reserving judgment as to a third claim (Ground 5(e)) pending further briefing. On November 5, 2013, respondents filed an answer with respect to Green's remaining claims. Green filed his reply on February 24, 2014.

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

The state court's factual findings are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398. In *Pinholster*, the Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made," and, therefore, the record under review must be "limited to the record in existence at that same time, i.e., the record before the state court." *Id*.

III. DISCUSSION

1. *Ground 3*

In Ground 3, Green claims a violation of his constitutional rights arising from the trial court's admission of evidence about the circumstances surrounding his arrest. At trial, Jason Woodard, a police officer with the Sparks Police Department, testified that Green's arrest was preceded by an eight-hour standoff with the police at Mona Linzie's residence, discussions between Green and a hostage negotiator, and Green surrendering when the police drove an armored vehicle toward the front of the residence. ECF No. 17-29, p. 16-46.

Green exhausted this claim by presenting it to the Nevada Supreme Court in his first state post-conviction proceeding. ECF No. 20-27, p. 26-30. The Nevada Supreme Court agreed that the trial court erred by admitting the evidence at issue. ECF No. 20-36, p. 8-10. In particular, the court held that the evidence was not sufficiently related to the charged crimes to fall within the statutory exception (Nev. Rev. Stat. § 48.035(3)[2]) to the general rule prohibiting evidence of uncharged acts or crimes. The court also concluded, however, that Green was not unfairly prejudiced by the error

---

[2] Nev. Rev. Stat. § 48.035(3) states as follows:

Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime shall not be excluded, but at the request of an interested party, a cautionary instruction shall be given explaining the reason for its admission.

given that he had not refuted the court's prior determination that "the evidence overwhelmingly supported the charges." *Id.*

Habeas relief is generally unavailable with respect to violations of state evidence law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal writ is not available for alleged error in the interpretation or application of state law); *Rhoades v. Henry*, 638 F.3d 1027, 1034, n. 5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief."); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991) (petitioner may not challenge evidentiary ruling on ground that it violated states's evidence code; failure to comply with state rules of evidence does not warrant federal habeas relief). The erroneous admission of evidence will rise to a constitutional violation only when "there are no permissible inferences the jury may draw from the evidence" and that evidence is "of such quality as necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920 (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir.1986)) (internal quotation marks omitted).

Green has not shown that the Nevada Supreme Court's harmless error determination was objectively unreasonable. Consequently, this court must defer to that determination and deny relief. *See Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (holding that a habeas petitioner must show that the state court's harmless error determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting *Richter*, 562 U.S. at 103)).

Ground 3 is denied.

    2. *Ground 5(b)*

Ground 5(b) is a claim that Green received ineffective assistance of counsel, in violation of his constitutional rights, by virtue of his counsel's failure to object to the evidence described in Ground 3.

*Strickland v. Washington*, 466 U.S. 668 (1984), outlines the standards for analyzing a claim of ineffective assistance of counsel (IAC).  Under *Strickland*, the petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.  The first *Strickland* prong asks whether an attorney's performance fell below an objective standard of reasonableness. *Id.* at 687-88.  The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Green has not established that, but for the admission of the evidence at issue, the outcome his trial would have been more favorable.  Moreover, the Nevada Supreme Court's determination as to lack of prejudice is entitled to deference under 28 U.S.C. § 2254(d).  Thus, his IAC claim based on counsel's failure to exclude evidence about the circumstances of his arrest is without merit.

Ground 5(b) is denied.

3. *Ground 5(c)*

In Ground 5(c), Green claims that he received ineffective assistance of counsel, in violation of his constitutional rights, by virtue of his counsel's failure to cross-examine the victim and her mother about the victim's extra-marital affair that involved a pregnancy and miscarriage.  According to Green, such evidence would have shown that his actions against the victim were not sexually-motivated and would have also supported a defense that the victim was fabricating allegations against him to get him out of her life.

This claim fails for the simple reason that, in accordance with a pre-trial ruling, counsel was precluded from conducting cross-examination on this subject matter.  ECF No. 17-10, p. 24-26. Suffice it to say, counsel's adherence to the trial court's order cannot be considered ineffective assistance under *Strickland*.

Ground 5(c) is denied.

       4.  *Ground 5(d)*

In Ground 5(d), Green claims that he received ineffective assistance of counsel, in violation of his constitutional rights, due to his counsel's failure to object to the trial court's use of "transition" jury instructions and failure to propose alternative instructions in relation to the aggravated stalking charge.  The instructions at issue stated, in part, as follows:

> **Instruction 30**: . . .  In order to find the defendant guilty of the lesser crime of misdemeanor stalking, you must unanimously agree that the accused did not threaten the victim with death or substantial bodily harm, and did not intend to cause her to be placed in reasonable fear of death or substantial bodily harm.
>
> **Instruction 37**: . . .  After you have unanimously agreed that the defendant is not guilty of [aggravated stalking], you then must determine whether or not the defendant is guilty of the lesser included crime of Misdemeanor Stalking.  If you unanimously agree that the defendant is guilty of Misdemeanor Stalking, you will sign and date the verdict form provided and present it, and your not guilty verdict for the Aggravated Stalking charge to the court.
>
> . . .
>
> You will note from this instruction that you must unanimously agree that the defendant is not guilty of the charged crime before you may find the defendant guilty or not guilty of any lesser charge

ECF No. 18-7, pp. 32, 39-40.

In deciding Green's direct appeal, the Nevada Supreme Court noted that it had "not yet had an occasion to review a criminal conviction based upon the use of an 'acquittal first' instruction as a guideline for jury deliberations on lesser-included offenses." *Green*, 80 P.3d at 96.  The court then concluded that, even though the instruction "improperly invites compromise verdicts," the error "did not affect Green's substantial rights because there is overwhelming evidence of Green's guilt of aggravated stalking." *Id*. at 96-97.  The court explained that the distinguishing element between the two crimes is placing the victim "in reasonable fear of death or substantial bodily harm" and that "Ms. Linzie, her friends and co-workers testified to Green's continuing telephone calls and threats of

1  violence, including threats to douse Ms. Linzie in gasoline, set her on fire and to bomb her place of
2  residence." *Id*. at 97.

3        Green presented Ground 5(d) in his first state post-conviction proceeding. The Nevada
4  Supreme Court affirmed the state district court's findings that Green had failed to satisfy either prong
5  of the *Strickland* test. ECF No. 20-36, p. 6-7. In support of that conclusion, the court noted that, at
6  the time of Green's trial, use of the challenged instruction was "common practice," so counsel did
7  not perform below "prevailing professional norms" in failing to object. *Id*. This conclusion was not
8  an unreasonable application of federal law. *See Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir.
9  2002) (rejecting ineffective assistance claim based upon counsel's failure to predict future changes in
10 the law and stating that "clairvoyance is not a required attribute of effective representation").
11 Similarly, the Nevada Supreme Court also reasonably applied the federal standard in concluding that
12 the overwhelming evidence supporting the aggravated stalking charge precluded Green from
13 demonstrating a reasonable probability of a different result but for counsel's performance.

14       Ground 5(d) is denied.

15         5. *Ground 5(e)*

16       In Ground 5(e), Green claims that he received ineffective assistance of counsel, in violation
17 of his constitutional rights, due to counsel's failure to request a cautionary instruction with respect to
18 testimony about statements Green made to a police detective. At trial, Detective Greta Fye testified
19 about a phone conversation she had with Green wherein they discussed what occurred on the night of
20 September 23, 2000. ECF No. 18, p. 26-29. According to that testimony, Green admitted to Fye that
21 he digitally penetrated the victim. *Id*. Green argues that effective counsel would have requested an
22 instruction that the an out-of-court admission by the defendant should be viewed with caution.

23       In deciding Green's direct appeal, the Nevada Supreme Court addressed whether the trial
24 court erred by not issuing the cautionary instruction. *Green*, 80 P.3d at 97. Citing *Ford v. State*, 660
25 P.2d 992 (Nev. 1983), the court concluded that failure to give the instruction did not amount to plain
26

error. *Id*. In *Ford*, the court held it was not error for the trial court to refuse the defendant's request to issue the cautionary instruction. *Ford*, 660 P.2d at 993.

Green has not suggested any reason the trial court would have been required to deviate from *Ford* in his case. Thus, he has not established that his counsel performed below the *Strickland* standard by not requesting the cautionary instruction.

Ground 5(e) is denied.[3]

6. *Ground 5(f)*

In Ground 5(f), Green claims that he received ineffective assistance of counsel, in violation of his constitutional rights, due to counsel's failure to offer an instruction for a lesser-included offense to sexual assault. In support of this claim, he makes the odd assertion that "the evidence in this case suggested that any digital penetration of victim was not sexually motivated and that petitioner's conduct stemmed from his suspicions that his wife (the victim) had been unfaithful again." ECF No. 5-2, p. 23.

According to Green, battery with intent to commit sexual assault was an available lesser-included offense. Under Nevada law, however, battery with intent to commit sexual assault includes a specific intent element and does not include the element of penetration, whereas sexual assault does not include the element of intent but does include the element of penetration. See Nev. Rev. Stat. §§ 200.366 and 200.400. The existence of penetration is not in dispute here. Moreover, the elements of Green's proposed lesser-included offense are inconsistent with what Green claims evidence the established. Thus, his claim that counsel was ineffective by failing to offer such an instruction must fail.[4]

---

[3] Because it concludes that Ground 5(e) fails as a substantive claim reviewed *de novo*, this court need not address whether Green's procedural default of the claim should be excused.

[4] The only other lesser-included offense Green identifies is "sexual battery." This does not appear to be a separate identifiable offense under Nevada law, but it normally involves an element of sexual arousal or gratification. *See, e.g., People v. Chavez*, 84 Cal. App. 4th 25, 29, 100 Cal. Rptr. 2d

1     Ground 5(f) is denied.

2         7. *Ground 6(b)*

In Ground 6(b), Green claims that he received ineffective assistance of appellate counsel, in violation of his constitutional rights, because his counsel did not raise a Confrontation Clause issue on direct appeal. According to Green, counsel should have alleged a Confrontation Clause violation arising from the trial court's ruling that prohibited Green from questioning the victim or her mother about the victim's extra-marital affair that involved a pregnancy and miscarriage. Green sought the trial court's permission to conduct such questioning, arguing that it fit within an exception to the rape shield law because it showed that the victim had a motive to lie about the sexual assault. ECF No. 17-10, p. 17-26. In denying Green's request, the trial court found that the events in question were too remote in time to warrant such an exception. *Id*.

Green presented Ground 6(b) his first state post-conviction proceeding. The Nevada Supreme Court affirmed the state district court's denial of the claim. In doing so, the court stated as follows:

> We conclude that Green failed to show that this issue had a reasonable probability of success on appeal. The event Green sought to cross-examine [the victim] about occurred eight months prior to the sexual assault at issue and therefore was of questionable relevance. Moreover, Green's desired cross-examination would not have changed the outcome of his case. Accordingly, we conclude the district court did not err in concluding that appellate counsel was not ineffective in this regard.

ECF No. 20-23, p. 8.

"[T]rial judges retain wide latitude insofar as the Confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In addition, the

---

680, 682 (2000). Thus, here again, an instruction on the offense would not have been warranted by Green's version of the evidence.

1  Supreme Court has recognized that a defendant's Sixth Amendment rights may be constitutionally
2  limited by a rape shield statute.  *Michigan v. Lucas*, 500 U.S. 145, 149 (1991).  Green has not
3  demonstrated that the trial court failed to properly balance his Sixth Amendment rights with the
4  victim's, as well as the state's interests.  *See LaJoie v. Thompson*, 217 F.3d 663, 670 (9th Cir. 2000)
5       In the absence of a showing that the underlying trial court ruling was in error, the Nevada
6  Supreme Court's rejection of Green's appellate IAC claim was a reasonable application of the
7  *Strickland* standard.
8       Ground 6(b) is denied.
9           8.  *Ground 6(c)*
10      In Ground 6(c), Green claims that he received ineffective assistance of appellate counsel, in
11 violation of his constitutional rights, because his counsel failed to raise the bad act evidence issue
12 discussed in Grounds 3 and 5(b), above.  In addition to denying Ground 3 and 5(b) in Green's first
13 state post-conviction proceeding, the Nevada Supreme Court also rejected Ground 6(c).  ECF No.
14 20-36, p. 10.  This claim fails for the same reason those claims do – that is, Green has not established
15 that the Nevada Supreme Court's adjudication was contrary to, or involved an unreasonable
16 application of, clearly established federal law.
17      Ground 6(c) is denied.
18      V.  CONCLUSION
19      For the reasons set forth above, Green's petition for habeas relief is denied.
20                  *Certificate of Appealability*
21      This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing
22 Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).
23 Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the
24 issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir.
25 2002).
26

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Green's petition, the court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Green's habeas claims.

**IT IS THEREFORE ORDERED** that the petitioner's petition for writ of habeas corpus (ECF Nos. 5/61) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

Dated this   1st   day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE